IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

OTONIEL HERNANDEZ,

    Plaintiff,

v.

CAROLYN W. COLVIN,
Acting Commissioner of Social Security,

    Defendant.

No. C 12-05822 CRB

**ORDER GRANTING COMMISSIONER'S CROSS-MOTION FOR SUMMARY JUDGMENT**

    In this social security case, pro se Plaintiff Otoniel Hernandez ("Hernandez") moves for reversal of Defendant Carolyn Colvin's ("Commissioner's") denial of his application for disability insurance benefits ("DIB"). Before the Court are two motions: Hernandez's Motion for Summary Judgment, MSJ (dkt. 12), and the Commissioner's Cross-Motion for Summary Judgment, XMSJ (dkt. 14). Because substantial evidence supports the Commissioner's decision, the Court GRANTS the Commissioner's Cross-Motion.

## I.  BACKGROUND

### A.  Statement Of Facts

    On January 15, 2009, fifty-two-year-old Hernandez, a truck driver for fifteen years, injured his left groin while moving and lifting freight. Administrative Record ("AR") at 11, 33, 36, 426-27. On January 28, 2009, Hernandez met with physician Jerry Collins, P.A., who completed a first report of the industrial injury. Id. at 720. On February 18, 2009, an ultrasound confirmed that Hernandez had sustained a left inguinal hernia. Id. at 720-21. Following hernia surgery on February 24, 2009, Hernandez returned to modified work duties on March 27, 2009, with instructions from Richard Paltenghi, M.D., not to lift more than twenty five pounds. Id. 720-21, 728. One month later, Hernandez went back to his regular

work duties, which required driving, heavy lifting, pulling, and pushing. Id. at 729. On July 1, 2009, Hernandez reported increased pain in his left groin and lower back from pushing a heavy container and did not return to work. Id. at 427, 721.

On July 28, 2009, Hernandez began meeting with treating physician Rakesh K. Dixit, M.D. Id. at 33-34, 427. Hernandez complained of ongoing symptoms of pain in his left lower back and leg. Id. at 427. On December 1, 2009, Dr. Dixit completed a residual functional capacity ("RFC") form, which indicated that Hernandez would not be able to return to an eight-hour workday. Id. at 34, 739. According to Dr. Dixit, Hernandez needed an assistive sensor device for pain and should lay down and take rest breaks every fifteen to thirty minutes. Id. at 739, 741. Dr. Dixit's RFC evaluation also concluded that he should never lift, carry, push, or pull more than ten pounds. Id. at 741.

Dickson Rena, M.D., and John D. Warbritton, III, M.D., examined Hernandez in connection with his workers' compensation claim. Id. at 426-31, 719-37. On August 18, 2009, Dr. Rena provided for the following RFC limitations: occasional lifting, pulling, and pushing of ten to fifteen pounds, occasional bending, and maximum lifting, pulling, and pushing of ten to fifteen pounds at a time. Id. at 430. On April 14, 2010, Dr. Warbritton stated that diagnostic studies confirm that Hernandez's left inguinal hernia repair held and that there was no evidence of recurrence. Id. at 721. And, during his physical examination, Dr. Warbritton described Hernandez's leg raising as "discordant and exaggerated" and stated that "[m]otor examination revealed inconsistent effort" such that he "was unable to obtain probative measures." Id. at 731-32. Dr. Warbritton concluded that, while Hernandez is unable to return to his customary job duties as a truck driver, modified work is recommended. Id. at 735.

In August 2009, examining physician Tom A. Vo, M.D., performed a repeat CT scan that confirmed there were no new signs of a hernia. Id. at 514. In October 2009, state agency physician E. Gallagher, M.D., reviewed Hernandez's medical records and maintained that Hernandez was capable of occasional lifting and carrying of up to twenty pounds, frequent lifting and carrying of up to ten pounds, standing, walking, and sitting for a total of

2

about six hours a day, and unlimited pushing and pulling. Id. at 438, 442. In December 2009, Constance T. Walker, M.D., reviewed Hernandez's worker compensation claims and noted a lack of "clinical findings to suggest he is in as much pain as he indicates." Id. at 476.

On April 19, 2011, during an administrative hearing, Hernandez testified that he is unable to return to work because of his constant pain and fatigue. Id. at 39. He said that he takes morphine daily to help with the pain but that it makes him drowsy. Id. at 39, 51. Hernandez also testified that he is unable to microwave food, make a sandwich, and lift anything over ten pounds and that his wife drives him to appointments, helps him shower, and pays someone to do their laundry. Id. at 13, 35, 45-46. Hernandez stated that he has traveled to Costa Rica, where he currently lives, twice since January 2010. Id. at 32, 48.

During that administrative hearing, the vocational expert testified that, based on the provided RFC—lifting and carrying ten pounds frequently, lifting and carrying twenty pounds occasionally, standing, walking, and sitting for six hours, and climb stairs and balance frequently—Hernandez could perform the following jobs: courier, mail sorter, cafeteria attendant, assembler, plastic design applier, and addressor. Id. at 52, 54-56.[1] But, when Hernandez's counsel added to the hypothetical attention and concentration limitations, alleged to result from fatigue and pain, the vocational expert said that Hernandez would not be able to perform the aforementioned jobs. Id. at 58-59.

**B.    Procedural History**

On August 27, 2009, Hernandez applied for DIB, alleging that he has been disabled due to hernia, back, and leg problems since January 15, 2009. Id. at 9, 66. After his application was denied and upon reconsideration, Hernandez requested a hearing before an administrative law judge ("ALJ"). Id. at 66, 79. On May 4, 2011, the ALJ denied Hernandez DIB. Id. at 6. On September 15, 2012, the Appeal's Council denied his request for review,

---

[1] In revising Hernandez's functional limitations to align with Dr. Rena's RFC for Hernandez—being able to occasionally lift, pull, and push ten to fifteen pounds and lift a maximum of ten to fifteen pounds—the vocational expert testified that there would be up to a 50 percent reduction in the number of mail sorter, cafeteria attendant, and courier positions available. Id. at 56-57.

3

making it the final decision of the Commissioner. Id. at 1. Hernandez then filed this action. Compl. (dkt. 1).

## II. LEGAL STANDARD

### A. Judicial Review Of The Final Decision Of The Commissioner

The district court "reviews the Commissioner's final decision for substantial evidence, and the Commissioner's decision will be disturbed only if it is not supported by substantial evidence or is based on legal error." Hill v. Astrue, 698 F.3d 1153, 1158-59 (9th Cir. 2012) (citing 42 U.S.C. § 405(g)). "Substantial evidence" is more than a mere scintilla, but less than a preponderance. Molina v. Astrue, 674 F.3d 1104, 1110-11 (9th Cir. 2012). It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Webb v. Barnhart, 433 F.3d 683, 686 (9th Cir. 2005) (citing Richardson v. Perales, 402 U.S. 389, 401 (1971)). The district court must consider the record as a whole, including evidence that supports and detracts from the Commissioner's conclusion. Frost v. Barnhart, 314 F.3d 359, 367 (9th Cir. 2002) (citing Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985)). If evidence reasonably supports affirming or overturning the decision, the court may not substitute its judgment for that of the Commissioner on review. Parra v. Astrue, 481 F.3d 742, 746 (9th Cir. 2007).

Summary judgment is a method for disposing of an action in which there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56. The burden of establishing the lack of a genuine issue of material fact is on the moving party. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). All inferences drawn must be viewed in the light most favorable to the nonmoving party. T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987).

### B. Standard For Determining Disability

A person is "disabled" for purposes of receiving DIB if he or she is unable to engage in substantial gainful activity ("SGA") due to a physical or mental impairment that has lasted for a continuous period of not less than twelve months. 42 U.S.C. § 423(d)(1)(A). To qualify for DIB, a claimant must be fully insured and have at least twenty quarters of

1 coverage in the forty-quarter period, which ends with the quarter in which the disability
2 occurred. Id. § 416(i)(3), 423(c)(1); 20 C.F.R. § 404.130(b).

3    The ALJ evaluates a DIB claim using a five-step sequential process. See 20 C.F.R § 416.920(a)(4). In the first step, the ALJ must determine whether the claimant is currently engaged in SGA. Id. § 416.920(a)(4)(i). If the claimant is not so engaged, the second step requires the ALJ to determine whether the claimant has a "severe" impairment which significantly limits his or her ability to perform basic work activities. Id. § 416.920(a)(4)(ii). If the claimant has a "severe" impairment, the third step requires the ALJ to determine whether the impairment meets or equals the criteria of an impairment listed in the relevant regulation. Id. § 404, Subpt. P, App. 1; id. § 416.920(a)(4)(iii). If the claimant does not meet or equal the criteria of a listed impairment, the fourth step requires the ALJ to determine whether the claimant has sufficient RFC to perform his or her past work. Id. § 416.920(a)(4)(iv). In the fifth step, the burden shifts to the ALJ to establish that the claimant can perform other SGA. Id. § 416.920(a)(4)(v). If the ALJ fails to meet this burden, the claimant must be found disabled. Id.

## III. DISCUSSION

Based on the five-step sequential analysis, the ALJ determined that Hernandez is not "disabled" for purposes of receiving DIB benefits. See generally AR at 6-19. Hernandez does not challenge the ALJ's findings as to the first three steps of the sequential analysis. Rather, Hernandez's Motion is brief, arguing only that the ALJ erred in finding that he could engage in SGA. MSJ at 2. He further states that he is currently receiving medical benefits through SFPATH Housing and Urban Health Clinic and seeing physician Kelly Eagen, M.D., and psychiatrist Christopher Hobart, M.D., whose declarations he attaches with Dr. Dixit's in support of his Motion. Id. at 2-3.

Conversely, the Commissioner moves for summary judgment on three grounds: (A) substantial evidence supports the ALJ's RFC determination; (B) the ALJ properly relied on the vocational expert's testimony to determine that Hernandez could perform work in the

1 national economy; and (C) the Court should disregard newly submitted evidence. See
2 generally XMSJ. Hernandez did not file an opposition or a reply in support of his Motion.

### A. Substantial Evidence Supports The ALJ's RFC Determination

At step four, the ALJ concluded that Hernandez has the RFC to perform light work, limited by the following restrictions: occasionally push, pull, and lift ten to fifteen pounds and occasionally bend. AR at 12 (citing 20 C.F.R. § 404.1567(b)). In reaching this RFC, the ALJ relied primarily on the opinions of examining physicians Dr. Rena and Dr. Warbritton. Id. at 13-16. The ALJ gave no weight to treating physician Dr. Dixit and found Hernandez's subjective complaints not credible. Id. The Court finds that substantial evidence supports the ALJ's RFC determination.

#### 1. Medical Opinions

The Commissioner first argues that substantial evidence supports the ALJ's RFC determination because it was based on Dr. Rena's and Dr. Warbritton's independent clinical findings. XMSJ at 4. The Commissioner also asserts that treating physician Dr. Dixit's more limiting RFC opinion does not find support in his treatment records. Id. at 5.

As a preliminary matter, the "RFC assessment must always consider and address medical source opinions," and in cases where the ALJ's assessment conflicts with an opinion from a medical source, the ALJ "must explain why the opinion was not adopted." Social Security Ruling ("SSR") 96-8p. Courts "distinguish among the opinions of three types of physicians: (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (nonexamining physicians)." Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995). Generally, more weight is given to a treating physician's opinion as to the nature and severity of a claimant's impairment(s). 20 C.F.R. § 416.927(c)(2). Nevertheless, a treating physician's opinion is only regarded as controlling where it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." Id. The ALJ must provide specific and legitimate reasons for discounting a treating physician's opinion. Tommasetti v. Astrue, 533 F.3d 1035,

1037 (9th Cir. 2008). The opinion of an examining physician is, in turn, entitled to greater weight than the opinion of a non-examining physician. Pitzer v. Sullivan, 908 F.2d 502, 506 (9th Cir. 1990). The opinion of an examining doctor may only be rejected for "specific and legitimate" reasons that are supported by substantial evidence in the record. Andrews v. Shala, 53 F.3d 1035, 1043 (9th Cir. 1995). The opinion of a non-treating physician that is based on "independent clinical findings that differ from those of the treating physician" may constitute substantial evidence. Id. at 1041 (citing Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989)).

Here, substantial evidence supports the ALJ's decision to use examining physician Dr. Rena's RFC determination to the exclusion of treating physician Dr. Dixit's. First, Dr. Rena's assessment was based on his own independent clinical findings. See Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001) (holding that a non-treating physician's opinion alone "constitutes substantial evidence, because it rests on his own independent examination of [the claimant]"). Dr. Rena examined Hernandez and determined that he had normal contours of the lumbar spine, his incision mark in his left inguinal areas was well healed, there was no localized tenderness, and his distal vascular status remained intact, among other findings. AR at 14, 428-29. Following examination, Dr. Rena provided for the following RFC used by the ALJ: "occasional lifting, pulling and pushing ten to fifteen pounds and occasional bending and maximum lifting, pulling, and pushing of the ten to fifteen pounds at a time." Id. at 430; see fn. 1, supra. Because Dr. Rena's RFC determination was based on his own clinical examination, the ALJ's decision was supported by substantial evidence. See Tonapetyan, 242 F.3d at 1149.

Second, the ALJ noted that Dr. Rena's conclusions were consistent with the medical findings of Drs. Warbritton, Vo, and Gallagher. See 20 C.F.R. § 416.927(c)(4) ("Generally, the more consistent an opinion is with the record as a whole, the more weight we will give to that opinion."). Like Dr. Rena, Dr. Warbritton opined that "modified work is recommended." AR at 735. Similarly, Dr. Vo agreed with Dr. Rena that Hernandez had only mild lumbar radiculopathy and no new or recurrent hernia. Id. at 14, 514. And, Dr.

1  Gallagher provided for an even less restrictive RFC than Dr. Rena's, allowing for occasional
2  lifting and carrying of up to twenty pounds. Id. at 438. Consequently, the ALJ assigned the
3  greatest weight "to the opinions by Dr. Rena and Dr. Warbritton, as they are consistent with
4  the medical record." Id. at 16.

    Third, the ALJ provided specific and legitimate reasons for discounting the medical opinions of treating physician Dr. Dixit, who was the only medical professional to find greater RFC limitations than Dr. Rena. See Lester, 81 F.3d at 830 (holding that when there is a conflict between a treating physician's and an examining physician's opinion, the ALJ may disregard the treating physician's opinion by providing "specific and legitimate reasons supported by substantial evidence in the record"). One reason the ALJ stated for rejecting the treating physician's opinion is that "Dr. Dixit's treatment notes [were] somewhat at odds with his recommendation." AR at 15. For example, the ALJ pointed out that Dr. Dixit's observation that Hernandez was "very active" was "not consistent with his functional capacity opinion." Id. at 16. Identifying inconsistencies in a treating physician's own treatment progress reports constitutes specific and legitimate reasons. See Valentine v. Comm'r Soc. Sec. Admin., 574 F.3d 685, 692-93 (9th Cir. 2009) (holding that a treating physician's report that the claimant was unemployable while at the same time noting that the claimant had improved functioning at work provides specific and legitimate reasons). Another explanation the ALJ gave for rejecting Dr. Dixit's opinion was that it lacked descriptive examination tests, such as the leg raising test done by Dr. Warbritton. AR at 15-16. "Controlling weight may not be given to a treating source's medical opinion unless the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques." SSR 96-2p. Thus, based on these rationales, substantial evidence supports the ALJ's decision to afford no weight to Dr. Dixit's conclusory opinions. See Tonapetyan, 242 F.3d at 1149 ("an ALJ need not accept a treating physician's opinion that is conclusory and brief and unsupported by clinical findings").

    In sum, although more weight is generally given to a treating physician's opinion, see 20 C.F.R. § 416.927(c)(2), where an examining physician's RFC determination is based on

8

independent clinical findings and consistent with other medical opinions, and where the ALJ has provided specific and legitimate reasons for rejecting a treating physician's contrary medical evidence, substantial evidence supports the ALJ's decision. Because substantial evidence supports the ALJ's decision, this Court declines to substitute its judgment for that of the Commissioner. See Parra, 481 F.3d at 746.

### 2. Claimant's Subjective Complaints

The Commissioner next contends that "the ALJ properly determined that [Hernandez's] allegations of subjectively disabling symptoms were not fully credible." XMSJ at 6. The Commissioner supports her position with examples from the record that indicate exaggeration and a lack of credibility. Id.

As a threshold matter, an RFC assessment should consider "only functional limitations and restrictions that result from an individual's medically determinable impairment or combination of impairments, including the impact of any related symptoms." SSR 96-8p. And, while a "claimant's subjective statements may tell of greater limitations than can medical evidence alone," Tonapetyan, 242 F.3d at 1147 (citing SSR 96-7p), subjective complaints are not conclusive evidence of disability. See 42 U.S.C. § 423(d)(5)(A) ("An individual shall not be considered to be under a disability unless he furnishes such medical and other evidence"). Still, the absence of objective evidence to support the claimant's subjective symptoms is insufficient to discredit testimony. Berry v. Astrue, 622 F.3d 1228, 1234 (9th Cir. 2010). The ALJ must identify the non-credible testimony and the evidence undermining the allegations. Id. That is, the ALJ must offer "specific, clear and convincing reasons" for rejecting the claimant's testimony. Tommasetti, 533 F.3d at 1039.

Here, the ALJ properly considered and rejected Hernandez's testimony as to his pain, fatigue, incapacity to work, and inability to lift anything over ten pounds, because she first, determined that the evidence did not support Hernandez's claims, and second, made specific credibility findings. See Thomas, 278 F.3d at 958. First, the ALJ noted that Hernandez did not furnish medical evidence to support his subjective claims of pain. See 20 C.F.R. § 404.1529(b) ("symptoms, such as pain, fatigue . . . will not be found to affect your ability

to do basic work activities unless medical signs or laboratory findings show that a medically determinable impairment(s) is present"). In fact, the ALJ pointed out that Hernandez's reported radicular pain was not supported by electrodiagnostic testing and the findings in his spine were relatively mild. AR at 17. And, the ALJ said, state agency medical consultants found a "persistent pattern of pain complaints with minimal objective findings." Id. at 16, 438. The ALJ also noted that, although Hernandez's symptoms were treated surgically, he returned to work, thus indicating that the surgery was effective. Id. at 17.

Second, the ALJ found Hernandez's testimony not credible. See Thomas, 278 F.3d at 958 ("If the ALJ finds that the claimant's testimony as to the severity of her pain and impairments is unreliable, the ALJ must make a credibility determination"). The ALJ observed that Hernandez reported little relief from his pain medication yet did not report side effects. AR at 17; see Chaudhry v. Astrue, 688 F.3d 661, 671 (9th Cir. 2012) ("If a claimant complains about disabling pain but fails to seek treatment, or fails to follow prescribed treatment, for the pain, an ALJ may use such failure as a basis for finding the complaint unjustified or exaggerated" (internal quotations omitted)). The ALJ also pointed out that "the record includes evidence strongly suggesting that the claimant exaggerated symptoms and limitations" and that his effort during examination testing was "discordant." AR at 14, 16-17, 731-32; see Thomas, 278 F.3d at 959 ("Even more compelling is the ALJ's finding, supported by the record, that [the claimant] failed to give maximum or consistent effort during two physical capacity evaluations . . . [and this] self-limiting behaviors . . . [and] efforts to impede accurate testing of her limitations supports the ALJ's determinations as to her lack of credibility."). Finally, the ALJ recognized that Hernandez had a responsibility to seek out appropriate work but instead removed himself from the market voluntarily, by relocating to Costa Rica and failing to submit his medical care records from there. AR at 17.

An ALJ is not required to believe every allegation of disability by a claimant. Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989). Even where a claimant produces evidence of an "ailment reasonably expected to produce some pain; many medical conditions produce pain not severe enough to preclude gainful employment." Id. Because "the ALJ's credibility

10

finding [wa]s supported by substantial evidence in the record, [the Court] may not engage in second-guessing." Thomas, 278 F.3d at 959.

### B. Substantial Evidence Supports The ALJ's Determination That There Are Jobs In The National Economy

At the fifth step, the ALJ considered Hernandez's age, education, work experience, and RFC and determined that there are jobs in significant numbers in the national economy that he can perform. AR at 18. Because the ALJ's hypothetical set out all of Hernandez's impairments that found support in the record, see fn. 1, supra, substantial evidence supports reliance on the vocation expert's testimony that jobs exist in the national economy that Hernandez can perform. See Magallanes, 881 F.2d at 757. The ALJ therefore properly determined that Hernandez is capable of performing occupations such as a cafeteria attendant and mail sorter. AR at 18, 56-57. Furthermore, the ALJ was not bound to accept the vocational expert's testimony that the representative jobs would be unfeasible when adding to the hypothetical a loss of attention and concentration from fatigue and pain, as proffered by Hernandez. AR at 58-59; see Copeland v. Bowen, 861 F.2d 536, 540-41 (9th Cir.1988) (holding that the hypothetical question need not include the claimant's subjective impairments if the ALJ makes specific findings that claimant is not credible).

### C. Evidence Of Disability After The ALJ's Decision Is Irrelevant

The Commissioner argues that the Court should disregard Hernandez's newly submitted medical evidence because he "cannot show that there is a reasonable possibility that these records would have changed the outcome of the administrative hearing" and because the "evidence must relate to the time period that was before the ALJ." XMSJ at 9. The Court agrees with the Commissioner to the extent that she avers that evidence submitted after an ALJ decision must relate "to the period on or before the date of the administrative law judge hearing decision." Id. at 10 (citing 20 C.F.R. § 404.976(b)(1)).

Here, Hernandez attaches to his Motion the medical evaluations of Dr. Dixit from June 12 and June 14, 2012, Dr. Hobart from March 19, 2013, and Dr. Eagan from March 26, 2013. See MSJ at 5-12. But, this Court's review is limited to evidence submitted on or before the ALJ's May 4, 2011 decision. AR at 6; see 20 C.F.R. § 404.976 ("The Appeals

11

Council will consider all the evidence in the administrative law judge hearing record as well as any new and material evidence submitted to it which relates to the period on or before the date of the administrative law judge hearing decision."). Accordingly, these doctors' opinions, related to evaluations of Hernandez after the ALJ decision, do not inform the Court's analysis or decision.

## IV. CONCLUSION

For the foregoing reasons, the Court GRANTS the Commissioner's Cross-Motion for Summary Judgment.

**IT IS SO ORDERED.**

Dated: November 6, 2013

CHARLES R. BREYER
UNITED STATES DISTRICT JUDGE